

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. AP-76,936

---

### TERENCE TRAMAINE ANDRUS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON DIRECT APPEAL
### FROM CAUSE NO. 09-DCR-051034 IN THE 240TH DISTRICT COURT
### FORT BEND COUNTY

---

**KELLER, P.J., filed a dissenting opinion.**

The Court remands for findings of fact that appellant never requested. I would not remand because I do not believe that the trial court was required to make findings of fact *sua sponte*.

### I. BACKGROUND

In a pretrial motion to suppress, appellant challenged the admissibility of his confession on the ground that it was obtained in violation of *Miranda* because officers continued to question him

after he invoked his right to counsel. The trial court conducted a pretrial hearing on this claim at which appellant and witnesses for the State testified. I will assume, *arguendo*, that there was a dispute in the testimony about whether appellant invoked his right to counsel with respect to interrogation. The trial court denied the motion to suppress without issuing findings of fact. Appellant never requested findings of fact during the trial proceedings, but, on appeal, the State filed a motion in this Court asking us to determine whether a remand for findings of fact from the trial court is required, and we denied that motion.

## II. ANALYSIS

In *Urias v. State*,[1] we remanded a case to the trial court for written findings of fact and conclusions of law regarding a claim that the admission of the defendant's confession violated the dictates of *Miranda v. Arizona*[2] because the officers continued their interrogation after the defendant invoked his right to remain silent.[3] We concluded that Article 38.22, § 6,[4] required such a remand "whether or not the defendant objects to the absence" of written findings.[5] This conclusion is inconsistent with how we have characterized § 6 in prior and subsequent caselaw and should be re-examined.

---

[1] 155 S.W.3d 141 (Tex. Crim. App. 2004).

[2] 384 U.S. 436 (1966).

[3] *Urias*, 155 S.W.3d at 141-42.

[4] *See* TEX. CODE CRIM. PROC. art. 38.22, §6.

[5] *Urias*, 155 S.W.3d at 142.

In *State v. Terrazas*,[6] we explained that § 6 was enacted in response to *Jackson v. Denno*,[7] which set forth constitutionally required procedures for determining whether a defendant's confession was involuntary.[8] Before *Jackson*, Texas followed the "New York rule," which allowed a trial court to suppress a confession on voluntariness grounds only if the undisputed facts showed involuntariness.[9] If the facts were disputed, the issue was submitted to the jury.[10] *Jackson* held that trial procedures "must . . . be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend."[11] For trial procedures to be fully adequate, an entity other than the jury charged with determining guilt must resolve the voluntariness of a confession because

> [e]xpanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence.[12]

*Jackson* was decided two years before *Miranda*. The issue in *Jackson* was whether the defendant's will was overborne by a combination of police tactics, the defendant's pain from his

---

[6] *Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999).

[7] 378 U.S. 368 (1964).

[8] 4 S.W.3d at 724-25.

[9] *Id.*

[10] *Id.*

[11] *Jackson*, 378 U.S. at 391.

[12] *Id.* at 390.

wounds, and his consumption of pain-killing drugs.[13]  The claim in *Jackson* was a due-process claim of actual involuntariness rather than a *Miranda* claim of presumed or imputed involuntariness from the failure to follow prophylactic procedures.

Article 38.22, § 6 was specifically designed to prescribe procedures to conform to *Jackson* for claims of actual involuntariness, like the claim at issue in *Jackson.*  Other portions of Article 38.22 contain procedures designed to conform to the prophylactic requirements of *Miranda*,[14] and § 5 contains various restrictions on the *Miranda*-type protections conferred by the statute, including a provision that "[n]othing in this article precludes the admission of . . .  a statement that does not stem from custodial interrogation."[15] In *Nenno v. State*, we construed this statement in § 5 to mean that "Article 38.22 applies only to persons in custody,"[16] but *Terrazas* later overruled *Nenno* "to the extent it decides Article 38.22, Section 6, applies only to custodial statements."[17]  The holding that § 5 does not limit the application of § 6, despite the rather expansive language in § 5, impliedly suggested that § 6 really has nothing to do with the rest of Article 38.22.

That implied suggestion was made explicit in *Oursbourn v. State*, where we said, "Article 38.22, § 6 is a very detailed section that is essentially independent of the other sections contained

---

[13]  *Id.* at 391-92.

[14]  *See* TEX. CODE CRIM. PROC. ART. 38.22, §§ 2, 3.

[15]  *Id.* § 5.

[16]  970 S.W.2d 549, 556 (Tex. Crim. App. 1998).

[17]  *Terrazas,* 4 S.W.3d at 727.

within Article 38.22."[18]  We made clear that a § 6 voluntariness issue is different from a warnings issue governed by §§ 2 and 3 and that submission of an instruction to a jury on the two types of issues were governed by different sections of Article 38.22.[19]  The decision to craft two separate jury-instruction provisions within Article 38.22 suggests that the legislature specifically saw the § 6 voluntariness as separate from the §§ 2 and 3 warnings issues.  In fact, the only jury instruction authorized by § 6 is a general one that speaks to actual involuntariness: "unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof."[20]

Moreover, the legislative decision to craft two separate jury-instruction provisions in Article 38.22—one within § 6 and the other outside of it—contrasts with the decision to craft only one findings-of-fact provision, contained within § 6.  If the legislature had wanted warnings claims under §§ 2 and 3 to be subject to mandatory findings of fact, it could have created a separate findings-of-fact provision, just as it did with respect to jury instructions.

We further explained in *Oursbourn* that § 6 requires initially that "a question" be raised regarding voluntariness before the protections of § 6 are triggered.[21]  For a question to be raised, the trial judge must be notified by a party about the voluntariness issue or the trial judge must raise the

---

[18]  259 S.W.3d 159, 174 (Tex. Crim. App. 2008).

[19]  *Id.* at 175 ("Because Section 6 contains its own jury-instruction provision, it is not governed by the jury-instruction provision found in Section 7.  The obvious purpose of Section 7 is to authorize and require jury instructions regarding the warnings and safeguards for written and oral statements outlined in Article 38.22, § 2 & § 3 (warnings on the right to remain silent, right to counsel, etc).").

[20]  *Id.*

[21]  *Id.*

issue on his own.[22]  It is only after § 6 is triggered by a question being raised that a whole sequence of procedures—including the issuance of written findings—becomes required.[23]

In the present case, there are, at best, two possible claims: (1) a warnings claim based on continued interrogation after invoking the right to counsel, and (2) a voluntariness claim based upon the allegedly coercive tactic of confining applicant to an automobile during hours of travel.  Only the second possible claim falls within § 6, and appellant did not raise that claim before the trial judge, nor did the trial judge raise it on his own.  (And it is not even clear that appellant has raised it on appeal).  Consequently, the requirements of § 6 were never triggered.  The first claim was raised before the trial judge, but it is a warnings claim, not a § 6 claim.  Applicant was required under *State v. Cullen* to request findings before being entitled to them.[24]  He did not do so.

I respectfully dissent.

Filed: February 25, 2015
Do not publish

---

[22]  *Id.*

[23]  *Id.* at 175 & n.55.

[24]  195 S.W.3d 696 (Tex. Crim. App. 2006).